IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONJA SEAWELL<br>on behalf of herself and all others<br>similarly situated | )<br>)<br>)<br>) | |
| Plaintiff, | ) | Civil Action No. 05-CV-479 |
| vs. | )<br>) | |
| UNIVERSAL FIDELITY<br>CORPORATION | )<br>)<br>) | CLASS ACTION |
| Defendant. | )<br>) | |

**PLAINTIFF'S SUPPLEMENTAL PRETRIAL MEMORANDUM**

Plaintiff Donja Seawell, by undersigned counsel, submits this Supplemental Pretrial Memorandum in accordance with the instructions provided by the Court during the June 6, 2007 final pretrial conference.

Specifically, this Supplemental Pretrial Memorandum provides: (1) a discussion as to the issue of whether Defendant's net worth is a question for the jury or the judge in this action under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"); (2) certain objections that Plaintiff has with Defendant's trial exhibits D-4 and D-10; and (3) a more detailed description of the anticipated testimony of Plaintiff's witnesses.

**I.     DEFENDANT'S NET WORTH IS AN ISSUE FOR THE JURY**

Claims such as Plaintiff's brought under the FDCPA, as well as claims under other sections of the Consumer Credit Protection Act ("CCPA"),[1] are entitled to the constitutional right of a trial by jury. *See Kobs v. Arrow Serv. Bureau, Inc.*, 134 F.3d 893, 897 (7th Cir. 1998)

---

[1] The CCPA is a package of consumer protection legislation that includes the FDCPA as well as the Truth in Lending Act, 15 U.S.C. §§ 1601-1667e ("TILA"); the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA"); the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f ("ECOA"); the Electronic Fund Transfer Act, 15 U.S.C. §§ 1693-1693r ("EFTA"); and, as of 1997, also the Credit Repair Organizations Act, 15 U.S.C. §§ 1679-1679j ("CROA").

(pursuant to the Seventh Amendment consumers were entitled to a jury trial under the FDCPA, even as to the additional "statutory" damages available under that act); *Sibley v. Fulton Dekalb Collection Serv.*, 677 F.2d 830, 832 (11th Cir. 1982) (consumer has right to jury trial under FDCPA); *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 224-226 (4th Cir. 1978) (trial by jury is guaranteed by the Seventh Amendment in a TILA action); *Mosley v. National Finance Co., Inc.*, 440 F.Supp. 621, 621-622 (M.D.N.C. 1977) (same for TILA); *In re McCormick*, 61 B.R. 595, 596 (Bankr. D. Nev. 1986) (same for TILA); *see also Cole v. American Family Mutual Insur. Co.*, Civ. No. 04-2073, *slip. op.* (D. Kan. April 19, 2005) (consumers have the constitutional right to a jury trial under the FCRA).

In an FDCPA class action, the determination of statutory damages is based upon 1% of the debt collector's "net worth." Specifically, with respect to statutory damages in class actions, the FDCPA provides as follows:

> (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector . . . .

15 U.S.C. § 1692k(a)(2)(B). The FDCPA further provides that: "In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors— . . . *the resources of the debt collector* . . . ."  15 U.S.C. § 1692k(b)(2) (emphasis added).

To Plaintiff's knowledge, nothing in the statute or case law dictates, or even suggests, that the right to a jury trial is abridged with respect to the net worth finding that can be part of the recovery in an FDCPA class action. Unless there is a stipulation under 15 U.S.C. § 1692k(a)(2)(B) that the $500,000 cap applies, then "1 per centum of the net worth of the debt

2

collector" is a factual issue in the case; and like any other factual issue of damages, it is a question for the jury.[2]

In this case, the statutory cap is not stipulated at $500,000, and as this Court has already held, the "1% of net worth amount" is disputed between the parties and could not be resolved through summary judgment. *See Seawell v. Universal Fidelity Corp.*, Civ. No. 05-479, 2007 WL 1030544 (E.D. Pa. April 2, 2006). Like any other contested issue as to liability or damages, therefore, Defendant's actual "net worth" is an issue for the jury.

## II.    PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EXHIBITS

Plaintiff objects to Defendant's use of proposed defense Exhibits D-4 and D-10. These exhibits were not timely or properly disclosed and are irrelevant.

Defendant describes Exhibit D-4 as "Universal Fidelity's screen captures on all class members." Presumably this relates to the two banker's boxes with thousands of pages of documents that Defendant turned over as "initial disclosures" on December 8, 2006. This was an improper disclosure and should be excluded from trial per Fed. R. Civ. P. 37(c) and separately per F.R.E. 402 & 403.

This case was filed on February 2, 2005 and the first scheduling conference was scheduled by Judge Angell for March 4, 2005. Defendant made no "initial disclosures" concerning the class at or before that time, as required by Fed. R. Civ. P. 26(a). In fact, after approximately 1½ years of discovery, Defendant failed to turn over any documents concerning class members. Defendant fought tooth-and-nail to try to persuade Plaintiff that the class could

---

[2]    As is customary for willful violations, in a recent FCRA case (another title of the CCPA) the net worth of the defendant was stipulated and presented to jury for its deliberation of an alleged willful violation of that statute. *Saunders v. Equifax Information Services, L.L.C.*, 469 F.Supp.2d 343, 347-48 (E.D. Va. 2007) ("The parties also stipulated that the net worth of BB & T was $3,271,115,000, and that fact <u>was presented to the jury for its consideration</u>") (emphasis added).

not be identified. After losing that battle, Defendant still failed to turn over any of the detailed documents that it possessed concerning class members. *See Seawell v. Universal Fidelity Corp.*, 235 F.R.D. 64 (E.D. Pa. March 6, 2006) (certifying class). Rather, it waited until December 8, 2006, after the final discovery period had closed on November 29, 2006 (*see* Docket No. 44) to turn over as a "disclosure" thousands of pages of detailed documents it had on class members. Defendant's untimely disclosure was prejudicial in that it deprived Plaintiff of the opportunity to ask any questions about the documents, to take any further discovery, and thus to properly prepare to cross examine witnesses at trial who would presumably testify about those documents.

Plaintiff immediately put Defendant on notice that it would object to the production, writing to defense counsel on December 12, 2006:

> In a matter where you have previously represented the Defendant could not identify class members, we are shocked with the thousands of pages of documents that you produced on Friday allegedly relating to the credit history of class members, and including detailed information about them and their account history. Contrary to what you say in your letter of the 8th, we do not find the production to be either in the spirit or to the letter of Rule 26. It goes without saying that we reserve the rights to object to the introduction of any of these documents at trial.

(from letter to Defendant's attorney Briggs from Plaintiff's attorney Soumilas). The documents of Exhibit 4 were not properly disclosed and Defendant should not be allowed to use them as trial exhibits per Fed. R. Civ. P. 37(c).

Moreover, these documents are irrelevant and a waste of time. The central issue at trial will be whether the theoretical "least sophisticated consumer" would take the letter Plaintiff has marked as P-1 to be misleading or deceptive. Thousands of pages of detailed accounts notes, credit histories, balances, payment notices, phone calls and related collection activity on over

300 consumers is irrelevant and would be a waste of time. Exhibit 4 should also be excluded, therefore, per F.R.E. 402 & 403.

Exhibit 10 is a federal court complaint filed by Plaintiff in a different matter against a different party in 2004 alleging, *inter alia*, improper bank withdraws and false threats. The complaint was not disclosed by Defendant during discovery. Moreover, that complaint has absolutely nothing to do with this action and is simply intended to cause unfair prejudice to Plaintiff, presumably by trying to label her as somehow indecent because she sued previously. Exhibit 10 should be excluded per Fed. R. Civ. P. 37(c) and F.R.E. 402 & 403.

### III. WITNESSES (PROVIDED WITH SUPPLEMENTAL DESCRIPTIONS OF ANTICIPATED TESTIMONY)

1. Donja Seawell
   4645 Castor Avenue
   Philadelphia, PA 19124

   Will testify concerning her reaction to the letter (P-1), her interactions and communications with Defendant, her understanding of "official" or "government" symbols and correspondence, and her emotional distress damages, and other matters, as per her deposition.

2. Frederick J. Cantz, Jr.
   Smart and Associates, LLP
   Four Penn Center
   Suite 1030
   1600 JFK BLVD
   Philadelphia PA 19103

   Will testify concerning Defendant's net worth per his expert report. Mr. Cantz is expected to testify consistently with his expert report and focus upon transactions by Defendant that artificially lowered its actual net worth.

3. Terry W. Simonds
   Universal Fidelity Corporation
   1445 Langham Creek Drive
   Houston, TX 77084

>   Will testify concerning Defendant's financial transactions and net worth. Specifically, Mr. Simonds is expected to testify about the corporate structure of Defendant and the divestures of certain large sums of cash addressed in Mr. Cantz's report.

4. Ken Sebek
   Universal Fidelity Corporation
   1445 Langham Creek Drive
   Houston, TX 77084

   Will testify concerning financial transactions and net worth. Mr. Sebek will testify about Defendant's accounting practices, its balance sheets, other financial documents, certain significant but unexplained corporate expenditures discussed in Mr. Cantz's report, and other matters, as pet his deposition.

5. B.L. Lyons
   Universal Fidelity Corporation
   1445 Langham Creek Drive
   Houston, TX 77084

   Will testify concerning form letter marked as exhibit P-1. Will also testify about the "administrative office" language, his signature on the letter, Defendant's procedures for sending dunning letters, and other matters, as per his deposition.

6. Darryl Hughes
   Universal Fidelity Corporation
   1445 Langham Creek Drive
   Houston, TX 77084

   Will testify concerning numerosity and the use of letterhead on the form letter marked as exhibit P-1. Mr. Hughes will further testify about the mail room and printer room operations of Defendant in using letterhead and mailing dunning letters, as per his deposition.

7. John Jackson, Esq.
   Universal Fidelity Corporation
   1445 Langham Creek Drive
   Houston, TX 77084

   Will testify concerning Defendant's policies and procedures for collecting debts and the company's use of form letters, as per his deposition.

8. Chin Ting Liao
   Universal Fidelity Corporation

        1445 Langham Creek Drive
        Houston, TX 77084

        Will testify concerning the number of letters sent and the records regarding the identity and number of those to whom the letters were sent. Ms. Liao is expected to further testify about the records that Defendant maintains about the amount and time of dunning letters that it mails, and other matters, as per her deposition.

9.     Liza Michel Aguilar
       Universal Fidelity Corporation
       1445 Langham Creek Drive
       Houston, TX 77084

       Will testify concerning numerosity and the use of letterhead on the form letter marked as exhibit P-1, as per her deposition.

10.    Custodian of Records/Corporate Representatives
       NCO Financial Systems, Inc.
       507 Prudential Road
       Horsham, PA 19044

       Will testify concerning form letter by that company for collection purposes and in particular about Exhibits 13 and 14.

11.    Arrow Financial Services, LLC Corporate Representatives
       P.O. Box 1206
       Oaks, PA 19456

       Will testify concerning form letter by that company for collection purposes and in particular about Exhibit P-12.

12.    Academy Collection Services, Inc. Corporate Representatives
       10965 Decatur Road
       Philadelphia, PA 19154-3210

       Will testify concerning form letter by that company for collection purposes and in particular about Exhibit P-11.

This Supplemental Pretrial Memorandum is:

                              Respectfully submitted,

                              **FRANCIS & MAILMAN, P.C.**

                    BY: */s/ John Soumilas*
                              JAMES A. FRANCIS
                              JOHN SOUMILAS
                              Attorneys for Plaintiff
                              Land Title Building, 19th Floor
                              100 South Broad Street
                              Philadelphia, PA 19110
Dated:  June 20, 2007             (215) 735-8600

## **CERTIFICATE OF SERVICE**

I, John Soumilas, hereby certify that, on this date, I caused a true and correct copy of the foregoing Plaintiff's Supplemental Pre-trial Memorandum to be served electronically in accordance with this Court's ECF procedures, upon the following individual:

>Norman W. Briggs, Esquire
>Frey, Petrakis, Deeb, Blum,
>Briggs & Mitts, PC.
>1601 Market Street
>Suite 2600
>Philadelphia, PA 19103

>**FRANCIS & MAILMAN, P.C.**

>BY:  */s/ John Soumilas*
>JAMES A. FRANCIS
>JOHN SOUMILAS
>Attorneys for Plaintiff
>Land Title Building, 19th Floor
>100 South Broad Street
>Philadelphia, PA 19110
>(215) 735-8600

Dated: June 20, 2007